**U.S. DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

DAVID HARTER ON BEHALF
OF HIMSELF AND OTHER
SIMILARLY SITUATED PLAINTIFFS

VS.

BP, PLC, ROYAL SHELL ,PLC
AND STATOIL,ASA AND JOHN DOES 1-20

IN RE: CLASS ACTION

BP, INC., SHELL OIL, PLC. STATOIL,ASA  AND
JOHN DOES 1-20, ET AL

## PETITION

NOW INTO COURT, come the plaintiffs, who are the royalty owners and working interest owners in oil leases operated by the defendants, or from whom the defendants have purchased oil or sold oil at market prices set by the defendants.  Plaintiffs are also those citizens who buy or sell oil in their businesses for the manufacture and processing or transportation of goods and services in the United States   David Harter appears, individually, and on behalf of those businesses in which he is an owner or has an interest.

1.

Plaintiff, David Harter, is a major resident of Louisiana and he, and the members of his family, both his parents and siblings, and their businesses ,have been and are now landowners of oil producing lands and have been or now are the owners of multiple royalty and working interests in oil leases in the State of Louisiana, Texas and in other states in North America.

2.

David Harter and his family members have been in the oil and gas business for over 60 years and continue to be in oil related businesses.  Furthermore, the oil production on these properties was

sold either directly or indirectly to the defendants (or through other parties) who set the prices based on the collusion and acts of conspiratorial acts of the defendants.

3.

The production was sold to one or more of the defendants or their agents or assigns or the defendants were subsequent purchasers of the oil.

4.

The prices paid to plaintiffs for said oil, gas and other petroleum products were artificially set by the defendants to the detriment of plaintiffs. The plaintiffs also appear individually and on behalf of those citizens who are buyers or sellers of oil in the normal course of their businesses for the manufacture, processing or transportation of said good and services in the stream of commerce in the interstate commerce of the U.S.

5.

David Harter, individually and on behalf of the similarly situated individuals and businesses, complains, upon knowledge as to himself, and his own acts, and upon information and belief as to all matters against the defendants, as follows:

6.

Made defendants and the manner which they may be served are:

1) BP Petroleum, PLC, a multinational oil company doing business in Louisiana

2) Shell Oil, PLC, a multinational oil company doing business in Louisiana

3) Statoil, ASA, a multinational oil company doing business in Louisiana

4) John Does 1-20 are other entities or persons, including oil, gas or other energy companies as well as other co-conspirators whose identities are unknown to Plaintiffs, who colluded with Defendants to fix the price of oil.

7.

Said defendants are all registered to do and doing business in the State of Louisiana and may be served through their duly appointed registered agents for service of process as set out below.

8.

Said defendants are liable unto your petitioners, jointly, severally and *in solido*, as they have colluded to fix the prices of oil and gas and petroleum products in the State of Louisiana by fraud, deception and collusion in a conspiracy to artificially set oil prices for their own illicit profits and to deprive the class plaintiffs of their property.   Plaintiffs have been damaged in the amounts of money wrongfully diverted to defendants.

9.

This Court has jurisdiction over this action pursuant to Section 22 of the CEA, 7

U.S.C. § 25, Section 1 of the Sherman Antitrust Act, 15 U.S.C. § **1,**Sections 4 and 16 of the

Clayton Act, 15 U.S.C. §§ 15 and 26(a), and 28 U.S.C.§§ 1331 and 1337, respectively. This Court also has jurisdiction over the state law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that it forms part of the same case or controversy, and under 28

U.S.C.§ 1332 because the amount in controversy for the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different state than Defendants.

10.

Venue is proper in the Middle District of Louisiana, pursuant to, among other statutes, Section 22 of the CEA, 7 U.S.C. §25(c), Sections 4, 12 and 16 of the Clayton Act, 15

U.S.C.§§ 15,22 and 26, and 28 U.S.C. §1391(b), (c) and (d). One or more of the Defendants resided, transacted business, were found, or had agents in the District, and a part of the events or

omissions giving rise to the claims occurred in the Middle District of Louisiana. A great deal of the purchase and sale of oil production in the United States takes place in the Middle District of Louisiana.

11.

The largest refining and production facilities in the world are located in this District and large quantities of oil are bought and sold daily here. The Brent Crude oil prices published and compiled by Platts are widely disseminated in the U.S. to Crude oil purchasers and sellers, who actually use the quoted prices to buy and sell the product at the point where it comes from the earth, including the Plaintiffs who are located in the United States.

12.

Crude oil and Crude oil futures contracts are each a commodity that trade in all of the states in the United States.

## BACKGROUND

13.

This action arises from defendants' unlawful combination, agreement and conspiracy to fix, and restrain trade and intentional manipulation of the price of crude oil (hereinafter defined as oil, gas crude oil, refined oil products, biofuels or any other petroleum products used by plaintiffs as Sellers or Buyers, in any form of petroleum derivatives whatsoever), and the prices of crude oil future's contract traded on the New York Mercantile Exchange (NYMEX) and Intercontinental Exchange (ICE) during the period of at least 2002 through the present in violation of numerous federal and state laws, including, but not limited to the Sherman Act 15 USC Sec. 1 & 2, and the Louisiana and Anti-Trust laws,
along with the State Anti-trust laws of the various states where the plaintiffs reside and have oil leases or conduct business utilizing crude oil.

14.

Defendants deliberately reported inaccurate, misleading and false information regarding Crude oil prices to Platts, a unit of McGraw Hill Financial, Inc. and the leading global provider of spot and contract pricing for the physical and financially settled Crude oil markets. Platts' Crude oil prices are used to price and set Crude oil and petroleum product prices in North America, including, but not limited to Louisiana, Texas and other states in North America where the class members reside, own lands with oil production, receive royalty or working interest income and/or operate their businesses, either individually, or as corporate entities, buying and selling oil to manufacture a their products and them transport to market.

15.

As major producers and market participants in the Crude oil market, including contributors of Crude Oil prices to Platts, Defendants had and continue to have market power and the ability to influence prices in the Crude oil market. By purposefully reporting inaccurate, misleading and false Crude oil trade information to Platts, Defendants manipulated and restrained trade in both the physical (spot) Crude oil market and the Crude Oil futures market. Plaintiffs sell oil from their oil lands and oil leases and the daily price set for Crude oil by defendants directly affects the prices at which they sell or buy their products and thus has a direct effect on the Interstate Commerce of the U.S. The Defendants actions caused the Plaintiffs to receive less than fair market value for their oil and caused losses thereby.

16.

On May 14, 2013 the European Commission confirmed that it, along with the EFTA Surveillance Authority, had carried out unannounced inspections of several companies active in

and providing services to the crude oil, refined oil products and biofuel sectors. The European Commission undertook the inspections on concerns that (i) the companies may have colluded in reporting distorted prices to a Price Reporting Agency ("PRA") to manipulate the published prices for a number of ill and biofuel products; and (ii) the companies may have prevented others from participating in the price assessment process, to facilitate the monopoly over price setting and to distort publishing prices. As described by the European Commission,

> The prices assessed and published by Price Reporting Agencies serve as benchmarks for trade in the physical and financial derivative markets for a number of commodity products in Europe and globally. Even small distortions of assessed prices may have a huge impact on the prices of crude oil, refined o9il products and biofuels purchases and sales, potentially harming financial consumers.

17.

Almost immediately following the European Commissions' announcement on May 14, Defendants BP plc, Royal Dutch Shell plc and Statoil ASA each confirmed they are the subject of the European Commission investigation. In particular, Defendant Statoil confirmed that its office in Stavanger (Norway) was subject to an inspection by the EFTA Surveillance Authority, assisted by the Norwegian Competition Authority. Statoil acknowledged that the inspection was carried out at the request of the European Commission. Further, Statoil confirmed that the scope of the European Commission's investigating is "related to the Platts" Market-On-Close price assessment process, used to report prices in particular for crude oil, refined oil products and biofuels" extending back to as early as 2002.

18.

On May 17, 2013, the U.K. Serious Fraud Office announced that it was "urgently reviewing" the European Commission's allegations of price-fixing in the oil markets and determining whether to accept the case for "criminal investigation" That same day, the

United States Senate called for the U.S. Department of Justice to join the European Commission investigations.

19.

The foregoing investigations are expected to yield information from Defendants' internal records (e.g., instant messages, e-mails, telephone records, crude oil trading data, etc.) that provide further support for Plaintiffs' claims. Plaintiffs believe further evidentiary support for the allegations will be unearthed after a reasonable opportunity for discovery.

20.

Plaintiffs have filed this action with all deliberate speed in order to prevent the destruction of any evidence which might prove their case, as those documents seized and subpoenaed by the European authorities, the U.K. Serious Fraud Office and the U.S. Department of Justice are expected to yield information from the defendants' internal records, e.g. instant messages, e-mails, telephone records, Crude oil trading data, recorded phone conversations etc. that will provide support for plaintiffs' claims. Furthermore, the Plaintiffs seek an Order from this Honorable Court enjoining, restraining and ordering the defendants not to destroy any documents or records in their possession related to information provided to any third party to set the price of oil by any means whatsoever.

21.

By the very nature of the conspiracy, these documents and records are in the sole custody and possession of defendants.  Plaintiff's belief that further evidentiary support of the allegations will be unearthed after a reasonable opportunity for discovery.

22.

The European Commission has advised that the alleged price collusion, which may have been going on since 2002, could have had a "huge impact" on the price of petro at the pumps, potentially harming final consumers.

23.

Labor members of the House of Commons have stated that "the alleged rigging of oil prices was as serious as rigging of LIBOR, which has led the banks being fined hundreds of millions of pounds".

24.

The defendants, BP, Shell, Norway's Statoil and Platts, the worlds' leading oil price reporting agency, all confirm they are being investigated by the EU.

25.

Defendant, Statoil has publicly announced:

> "Statoil which is 67%-owned by the Norwegian government, has admitted and stated publicly that "The authorities suspect participation by several companies, including Statoil, in anti-competitive agreements and/or concerted practices contrary to Article 53 of the European Economic Area. (EEA) [market manipulation].
>
> "The suspected violations are related to the Platts' Market-On-Close (MOC) price assessment process, used to report prices in particular for crude oil, refined oil products and biofuels, and may have been ongoing since 2002."

26.

On information and belief, plaintiffs are advised that Pannonia Ethanol, a Hungarian biofuel producer, just reported on May 16th that it had lodged a Complaint with the Commission last year in 2012 after Platts denied a request to contribute to its price setting process.

In addition to conspiring among themselves, defendants have conspired to freeze out other parties in order to control the pricing information submitted to Platts.

27.

On information and belief Nestle Oil Oyg (NES1V), Finland's only refiner, said on May 16th it was asked to provide information regarding an inquiry and is not a target of the investigation. ENIspa, Italy's largest oil company, has received a request for information but isn't under investigation.

28.

Additionally, on information and belief, a preliminary bond prospectus dated May 10th obtained by Bloomberg News showed a subsidiary of Gunvor was served a subpoena by the U.S. Attorney's Office, for the Eastern District of New York in April 2011 for documents related to its oil-trading activities. Castor Americas, Inc., a Delaware incorporated member of the group and three of its staff received subpoenas according to the prospectors. A Gunvor employee was also served.

29.

On further information and belief, the worlds' largest commodity trading companies, from Glencore-Xstrata, the $70 billion dollar mining firms, to Gunvor Group, Ltd. were asked to provide information to European regulators regarding rigged oil prices. The European Commission has publicly announced that its inquiry is probing whether oil companies colluded to distort prices.

30.

Plaintiffs seek class action certification on behalf of any and all similarly situated landowners of oil bearing lands, any and owners of any working interests and/or royalty interests holders of oil and gas leases in the State of Louisiana, Texas and/or North America.

Said defendants are all registered to do and doing business in the State of Louisiana. Defendants regularly produce, extract, buy and sell oil to the Class Plaintiffs in Louisiana, Texas and other states in North America.

31.

Said defendants are liable unto your petitioners, jointly, severally and *in solido*, as they have colluded to fix the prices of oil and gas and petroleum products in the State of Louisiana by fraud, deception and collusion in a conspiracy to artificially set oil prices for their own illicit profits and to deprive the class plaintiffs of their property. Plaintiffs have been damaged in the amounts of money wrongfully diverted to defendants.

Various other entitles and individuals, including, but no limited to, subsidiaries and/or affiliates of the Defendants participated as co-conspirators and manipulators in the acts complained of and performed acts and made statements that aided and abetted and furthered the unlawful conduct as alleged herein. The unnamed co-conspirators, along with the above-named Defendants, performed, participated in, furthered, and/or combined, conspired, or agreed with others to perform the unlawful acts alleged herein, including the restraint of trade, fixing and manipulation of the prices of Crude oil and Crude oil futures contracts.

32.

Plaintiffs have been landowners, royalty and working interest owners in Louisiana for the last 65 years and have been deprived of the true value of their production, oil royalties and working interest payments.

33.

Plaintiffs seek actual damages, plus treble damages and attorneys' fees as allowed by statute.

34.

Because of the large number of landowners with oil production ,working interests, royalty interests, and oil lease holders in the State of Louisiana, plaintiffs seek class action certification in order to have all of these causes of action resolved in a manner in accordance with Federal and applicable state law , including but not limited to Louisiana law on the following basis.

35.

Petitioners pray for certification of a class of all landowners of oil producing property, together with all oil lease royalty and working interests owners in the State of Louisiana or any state in the United States. Plaintiff further seek to include in their class all persons, businesses or entities in Louisiana, Texas or any state in The United States who have bought or sold crude oil or oil related products since 2002 to date based upon the rigged prices.

**CLASS ACTION ALLEGATIONS**
36.

Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on his own behalf and as a representative of the following Class[1] :

All landowners (whether onshore or offshore) in Louisiana, Texas or any state in North America of oil producing property, oil lease owners, royalty or working interests owners, persons, business or entities (other than Defendants and any parent, subsidiary, affiliate, or agent of any Defendant) that purchased or sold Crude Oil during the period of at least 2002 through the Present (the "Class Period").

37.

The Class is so numerous that the individual joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that at least thousands of geographically dispersed Class members transacted in Oil and Crude Oil futures contracts during the Class Period.

Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class sustained damages arising out of Defendants' common course of conduct in violation of law as complained of herein.

38.

The injuries and damages of each member of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

39.

Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative of the Class and has no interests which are adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including commodity futures manipulation and antitrust class action litigation.

40.

.   Common questions of law and fact exist as to all members of the Class which

predominate over any questions affecting solely individual members of the Class. These common questions of law and facts include, without limitation:

 (a) Whether Defendants manipulated Crude Oil prices and futures contracts in violation of the
  CEA;

 (b) Whether such manipulation caused Crude Oil prices and futures contracts to be artificial;

 (c) Whether such manipulation caused cognizable legal injury under the CEA;

 (d) Whether Defendants unlawful acts violate Section 1 of the Sherman Act, the Clayton Act And State Law

 (e) Whether Defendants attempted to monopolize and/or did monopolize the market for Crude Oil;

 (f) Whether Defendants' unlawful conduct caused injury to the business or property of Plaintiff and the Class;

 (g) Whether Defendants were unjustly enriched at the expense of Plaintiff and members of the Class;

 (h) The operative time period and extent of Defendants' foregoing violations; and

 (i) Whether such injury or the fact or extent of such artificiality may be established by common, class-wide means, including, for example, by regression analysis, econometric formula, or other economic test.

41.

The class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that

numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

42.

In violation of Section 2 of the Sherman Act, Defendants attempted to monopolize and did monopolize the Relevant Markets as defined below:

43.

The Relevant Market ("Relevant Market") is Crude Oil (BFOE).

44.

During the Class Period, as major producers and market participants (including Platts Brent crude oil contributors), Defendants attempted to monopolize and did monopolize the Relevant Market. Defendants' unlawful price control of the Relevant Market during the Class Period reflects monopoly power.

45.

Defendants' conduct and its resulting impact on the Relevant Market occurred in the U.S.

The anticompetitive effects of Defendants' conduct far outweigh any ostensible competitive benefits or justifications.

46.

Plaintiff and members of the Class have been injured in their business or property by Defendants' attempted monopolization and monopolization of the Relevant Market.

47.

Defendants' anticompetitive conduct had severe adverse consequences on competition and price discovery. Plaintiffs have liberally obtained information and case pleading information from counsel's pleadings in the Prime International Ltd. case and Plaintiffs gratefully acknowledge same. Plaintiff and other members of the Class who traded oil and crude oil futures during the Class Period were deprived of normal, competitive trading patterns and, instead, were subjected to artificially determined prices as a result of Defendants' unlawful and manipulative conduct. As a consequence thereof, Plaintiff and the Class suffered financial losses and were, therefore, injured in their business and property.

48.

Defendants financially benefited from their unlawful acts. These unlawful acts caused Plaintiff and other members of the Class to suffer injury, lose money, transact ,buy and sell oil contracts at artificial prices.

49.

As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner.  Each Defendant should pay restitution or its own unjust enrichment to the members of the class and to Plaintiffs.

50.

Plaintiffs and members of the Class are entitled to the establishment of a constructive trust impressed on the benefits to Defendants from their unjust enrichment and inequitable conduct.

### **FINAL PRAYER FOR** RELIEF:

Accordingly, Plaintiff demands relief as follows:

A.	For an order certifying this lawsuit as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Ru1es of Civil Procedure, and designating Plaintiff as the Class representative, and his counsel be appointed as Class counsel;

B.	For a judgment awarding Plaintiff and the Class damages against Defendants for their violations of the CEA, together with prejudgment interest at the maximum rate allowable bylaw;

C.	For the unlawful conduct alleged herein to be adjudged and decreed to be aunlawful restraint of trade in violation of Section 1 of the Sherman Act, Plaintiffs seek recovery under any applicable state or federal statute, including, but not limited to the Sherman Antitrust Statute and the Clayton Antitrust Statute, including the Louisiana Unfair Trade Practices Act or other applicable state law..

D.      For Defendants, their subsidiaries, affiliates, successors, transferees, assignees and the respective officers, directors, partners, agents, and employees and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from continuing and maintaining the conspiracy alleged in the Complaint;

E.      For a judgment awarding Plaintiff and the Class damages against Defendants for their violations of the federal antitrust laws, in an amount to be trebled in accordance with such laws;

F.      For a judgment awarding Plaintiff and the Class restitution of any and all sums received by the Defendants' unjust enrichment;

G.      For an award to Plaintiff and the Class of their costs of suit, including reasonable attorneys' and experts' fees and expenses; a

H.      For such other and further relief as the Court may deem just and proper.

DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED:

Fenet Law Firm, LLC

By:/S/ **Robert W Fenet**
Robert W. Fenet
4315 Bluebonnet Blvd., Suite B
Baton Rouge, La. 70809
Tel:   225 926 5500
Fax:   225 926 7417
Email: bob@fenetlaw.com

*(Attorneys for David Harter and the Class)*

**Y:\BP Class Action lawsuit\BP Oil Petition 5 26 13 - .docx**